IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MICHAEL A COX,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| VS. | : NO. 5:22-CV-00008-MTT-CHW |
| | : |
| **COMMISSIONER TIMOTHY C WARD,** *et al.*, | : |
| | : |
| **Defendants.** | : |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Michael A. Cox, an inmate currently incarcerated at the Macon State Prison in Oglethorpe, Georgia, has provided the Court with information concerning his efforts to have the initial partial filing fee deducted from his account. While the Court still has not received this fee, Plaintiff's submissions indicate that this failure cannot be attributed to Plaintiff's action or inaction. The Court will therefore waive the requirement that the initial partial filing fee be paid before further processing of this case, and Plaintiff's claims are now ripe for review pursuant to 28 U.S.C. § 1915(e) and § 1915A. Having conducted such review, Plaintiff's claims that Defendants Ward, Berry, Martin, and Easley were deliberately indifferent to the violent conditions at Baldwin State Prison ("BSP") shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motion for an order to show cause (ECF No. 14) be **DENIED.**

## MOTION FOR ORDER TO SHOW CAUSE

Plaintiff has filed a document he titles, "Order to Show Cause for Preliminary Injunction & Prison Release Order" (ECF No. 14). In this document, Plaintiff seeks a preliminary injunction generally barring Defendants from violating Plaintiff's constitutional rights. Mot. Inj. 1-2, ECF No. 14. But "[i]t is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). Plaintiff's motion for an injunction that simply requires the Defendants to refrain from violating his constitutional rights should therefore be denied.

Plaintiff also seeks a "prison release order." Mot. Inj. 3, ECF No. 14. Federal law permits a three-judge court to enter a prisoner release order in a civil action challenging prison conditions, but only where (1) "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order" and (2) "the defendant has had a reasonable amount of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(3). In this case, Plaintiff has failed to identify any previous court orders for less intrusive relief with which Defendants have failed to comply. Although Plaintiff appears to suggest that a court entered an order for less intrusive relief in one of his previously filed cases, that case was dismissed without prejudice for failure to prosecute. *See generally Cox v. Nelson*, Order Dismissing Compl., ECF No. 37 in Case No. 5:19-cv-00326-TES-MSH (M.D. Ga. Oct. 16, 2020). Plaintiff has therefore failed to meet his burden of establishing that a prisoner

2

release order is appropriate in this case, and his request for such an order should be denied.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I. Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state

a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II. **Factual Allegations**

The claims in Plaintiff's original Complaint arise from his detention at the Baldwin State Prison ("BSP"). Compl. 5, ECF No. 1. According to the Complaint, the conditions at BSP are "extremely violent," "barbaric," and "unsafe." *Id.* Plaintiff contends that BSP is understaffed, leading to the "ready availability" of knives and other weapons and the

4

failure to adequately control prisoners during prison movement. *Id*. at 6. Plaintiff also claims he was "brutally assaulted" in his dorm with a pipe and was left unattended and bleeding "ferociously" for several hours before receiving medical attention. *Id.* Indeed, Plaintiff states that the only reason he received medical treatment at all was because he was able to e-mail his mother, who contacted the prison. *Id.*

Plaintiff also contends that overcrowding at BSP has contributed to the spread of COVID-19 at the prison. Compl. 8, ECF No. 1. More specifically, Plaintiff contends that the overcrowding makes social distancing in the dorms impossible, and once inmates contract the virus, they do not receive appropriate medical care. *Id.* Plaintiff thus alleges that his treatment at BSP has violated his constitutional rights, and as a result he seeks a "prisoner release order" and monetary compensation. *Id.* at 10.

Plaintiff also filed a document that was docketed as an Amended Complaint (ECF No. 12). In his Amended Complaint, Plaintiff alleges he was "unexpectedly" transferred to the Macon State Prison ("MSP") "a couple months" after filing this lawsuit. Am. Compl. 3, ECF No. 12. Plaintiff contends MSP is "as understaffed or possibly more understaffed" than BSP, more violent, and so overcrowded that prisoners do not have access to proper medical care. *Id.* Plaintiff contends his transfer to MSP "was a vindictive retaliatory tactic," and he notes that at least one other prisoner who filed a similar lawsuit at BSP was also "transferred to a more violent, extremely danger understaffed and overcrowded facility" in retaliation for filing that lawsuit. *Id.* at 3-4. Plaintiff thus seeks to raise retaliation claims against individuals at BSP as well as claims against prison officials at

5

MSP due to the allegedly dangerous conditions of confinement at that facility. *See id.* at 5-6.

### III. Plaintiff's Claims

#### A. Macon State Prison Claims

As a preliminary matter, the claims in Plaintiff's Amended Complaint concerning the conditions of his present confinement at MSP are not properly before this Court. A plaintiff is only permitted to set forth related claims in a single lawsuit. A plaintiff may not join unrelated claims and various defendants in his complaint unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (emphasis added). "[A] claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).

In this case, Plaintiff has failed to establish that his claims concerning the conditions of his confinement in MSP are logically related to his claims concerning the conditions of his confinement at BSP. At most Plaintiff suggests that "[a]ll 55 prisons in Georgia are currently understaffed," Compl. 7, ECF No. 1, and he surmises that MSP is "as understaffed or possibly more understaffed" than BSP and "statistically and factually extremely more violent[ and] dangerous," Am. Compl. 3, ECF No. 12. Apart from these conclusory assertions, however, Plaintiff, has not pleaded specific facts that tend to demonstrate that the understaffing at MSP rises to the level of a constitutional violation.

6

Unlike his claims against prison officials at BSP, for example, he has failed to describe any violent incident that he witnessed, particular situation that poses significant danger to inmates, or specifics about the number of guards typically on duty at MSP. Absent such facts, Plaintiff cannot show that his claims bear any logical relationship to one another for purposes of Rule 20. *See, e.g., Wyatte v. Bryson*, Civil Action No. 5:15-cv-92, 2016 WL 917327, at *4 (S.D. Ga. Mar. 8, 2016) (finding that joinder was inappropriate where prisoner's "asserted rights to relief arise out of isolated instances, in which [prisoner] believes different officials at separate facilities failed to follow prison policy concerning placement in administrative segregation"); *Smith v. Anderson*, No. CV311-044, 2011 WL 7098040, at *8 (S.D. Ga. Nov. 14, 2011) (claims were not sufficiently related for joinder purposes where they "share[d] some similarities as their legal bases" but "involve[d] different Defendants, different time-frames, and different prisons").

Because joinder of these claims is inappropriate, and because it does not appear that the statute of limitations would bar Plaintiff from refiling his claims if he acts promptly to do so, Plaintiff's claims concerning the conditions of his confinement at MSP should be dismissed without prejudice. *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (holding that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").[1]

---

[1] Because these claims would be dismissed without prejudice, Plaintiff may refile his claims in a separate suit if he desires. The Clerk is **DIRECTED** to furnish Plaintiff a copy of the Court's standard § 1983 form that Plaintiff may use for this purpose.

B.  <u>Deliberate Indifference to Safety Claims</u>

Plaintiff contends that Georgia Department of Corrections Commissioner Timothy Ward; Walter Berry, the BSP warden; and Eric Martin and Lawrence Easley, the deputy wardens of security at BSP have been deliberately indifferent to the "extremely dangerous" and violent conditions at BSP.  Compl. 6, ECF No. 1.  This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner asserting an Eighth Amendment deliberate indifference to safety claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).  To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.  *Id.* at 1332.

Plaintiff alleges that BSP is an "extremely violent" and "barbaric environment" where inmates have ready access to "knives and other weaponry."  Compl. 5, ECF No. 1.  Plaintiff's Complaint further suggests that the prison is regularly understaffed.  For example, Plaintiff states there are some evenings when there are only two prison guards monitoring six to seven buildings containing 900 inmates.  *Id.* at 7.  Plaintiff contends that understaffing exacerbates this violence because there are not enough guards to "control prisoner movement," making that activity very dangerous.  *Id.*  Plaintiff was also personally assaulted and seriously injured "by another inmate with a large sharp, thick pipe."  *Id.*

8

Moreover, Plaintiff avers that when he was injured, he was unable to receive medical attention for "hours" because there were not enough supervising officers or staff present at the prison. *Id.* Plaintiff also alleges that he "addressed concerns" directly to Defendants Berry, Martin, and Ward, *id.* at 4, and it is reasonable to infer that these Defendants, as well as Defendant Easley, would have been aware of the level of inmate-on-inmate violence and any staffing issues at the facility, *see, e.g., Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) (per curiam). Although these allegations are relatively minimal, when they are construed liberally and taken as true, the Court cannot say Plaintiff's claims are necessarily frivolous. Plaintiff's Eighth Amendment deliberate indifference to safety claims shall therefore proceed for further factual development against Defendants Ward, Berry, Martin, and Easley.

### C. Conditions-of-Confinement Claims

Plaintiff also alleges that the overcrowding at BSP violates his Eighth Amendment rights. More specifically, Plaintiff contends that the overcrowding prevents inmates from maintaining a safe social distance, thus exacerbating the spread of COVID-19. Compl. 8, ECF No. 1. Plaintiff also alleges that inmates who have contracted COVID-19 do not receive adequate medical treatment. *Id.* These claims are too vague and conclusory to state an actionable constitutional claim.

It is well-established that even though "the Constitution does not mandate comfortable prisons," a prisoner's claim that the conditions of his confinement constitute cruel and unusual punishment may state a claim for relief under the Eighth Amendment.

9

*Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The prisoner must also show that prison officials acted with deliberate indifference, i.e., that the officials knew that the challenged conditions posed an excessive risk to the prisoner's health or safety but disregarded them. *Swain v. Junior*, 958 F.3d 1081, 1088-89 (11th Cir. 2020).

In this case, Plaintiff has failed to plead facts sufficient to show a constitutional violation. Even if the Court assumes that the risk of contracting COVID-19 satisfies the objective element of a substantial risk of serious harm, the fact that social distancing in the dorms is impossible—standing alone—does not evince "deliberate indifference." *See Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (acknowledging the likelihood that the risk of COVID-19 constitutes a substantial risk of serious harm but holding that the failure to "do the 'impossible' by ensuring six-foot social distancing" was not sufficient to

10

show deliberate indifference); *Consenta v. Thomas*, Case No. 7:20-cv-01258-CLM-SGC, 2022 WL 1788965, at *5 (N.D. Ala. Feb. 9, 2022) (finding that "the fact that the size of a prison's population makes it impossible to achieve COVID-19 risk mitigation measures in full does not satisfy the second and third prongs of the subjective component of a deliberate indifference claim"). Plaintiff has simply failed to provide the Court with enough factual detail to permit it to conclude that Defendants' response to this unprecedented pandemic was reckless. *See Swain*, 961 F.3d at 1287-88 (holding the court "must focus not on isolated failures—or impossibilities, as the case may be—but rather on the defendants' entire course of conduct" to determine whether defendants exhibited deliberate indifference). These claims are therefore subject to dismissal.

### D. Eighth Amendment Medical Treatment Claims

Plaintiff also contends that he was not provided with medical treatment for several hours after he was assaulted with a pipe and seriously injured. In addition, Plaintiff generally alleges that inmates who have contracted COVID-19 are deprived of adequate medical treatment. Allegations that jail officials were deliberately indifferent to a prisoner's serious medical needs can state a constitutional claim. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow*, 320 F.3d at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other

11

words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A "serious medical need" may also exist when "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

To the extent Plaintiff intends to raise a claim that he did not receive adequate medical care after he was attacked, he has failed to state a constitutional claim. Though Plaintiff's allegations that he was bleeding for several hours without receiving medical attention could show that he suffered from a serious medical need, he has not pleaded facts sufficient to show that any named Defendant knew Plaintiff was injured and personally participated in any decision to withhold or delay treatment. The Court will therefore assume that Plaintiff is attempting to hold these Defendants liable in their capacity as the supervisors of other prison officials. It is well-settled in the Eleventh Circuit, however, that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In the absence of an allegation that a supervisor personally participated in unconstitutional conduct, a prisoner must establish some other causal connection between the supervisor's actions and the alleged

constitutional injury to hold the supervisor liable under § 1983. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). This causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

In this case, Plaintiff has not alleged that any named Defendant instructed a subordinate to act unlawfully or knew they would do so and failed to stop them. Rather, Plaintiff appears to suggest that Defendants had a policy of understaffing the prison and that this policy prevented him from obtaining medical care when he needed it. But "[a] plaintiff can only allege the existence of a policy or custom by point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee." *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (internal quotation marks omitted) (alteration in original). Plaintiff has not pointed to any other incidents where inmates were not able to receive medical attention that would have given Defendants actual or constructive notice that their policies regarding staffing could lead to this type of constitutional violation. Because Plaintiff has failed to plead facts sufficient to show that a supervisory Defendant's policy or custom led to a violation of his constitutional rights, his supervisory liability

claims are subject to dismissal.

Plaintiff's allegations that inmates exposed to COVID-19 were not provided with adequate medical care are similarly too vague and conclusory to state an actionable Eighth Amendment claim. While the failure to provide an exposed inmate with adequate medical treatment could certainly state a claim for relief if accompanied by specific facts showing the seriousness of the inmate's condition, Plaintiff has not supplied the Court with any such facts or alleged that he has been personally deprived of medical attention for COVID-19. *Cf. Moulds v. Bullard*, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (holding that prisoner's "general claim that overcrowding at [the jail] led to unsanitary conditions" did not state a conditions-of-confinement claim where prisoner "did not state any details that would indicate how 'extreme' those conditions were, and did not contend that he personally faced a health risk as a result of any of these conditions"). Plaintiff has also failed to allege a basis for holding any named Defendant liable in their supervisory capacity for the failure to treat inmates for COVID-19. These claims should also be dismissed.

    E.  Retaliation Claims

Plaintiff next alleges that he and at least one other inmate who filed lawsuits against prison officials were "unexpectedly" transferred to less favorable prisons. Am. Compl. 3, ECF No. 12. Plaintiff contends that these transfers were "vindictive" and "retaliatory." *Id.* at 3-4. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow*, 320 F.3d at 1248. Thus, a prisoner litigant may state a claim for retaliation by alleging that (1) he engaged in constitutionally protected

speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff engaged in constitutionally protected speech when he filed this lawsuit. Plaintiff does not, however, include factual allegations to show that there was a relationship between his speech and his transfer, which occurred three months after he filed his lawsuit. *See* Compl. 10, ECF No. 1 (signed December 28, 2021); Am. Compl. 3, ECF No. 12 (alleging transfer occurred on March 29, 2022). Indeed, Plaintiff has not even identified which named Defendant was responsible for his transfer. Plaintiff's vague and conclusory allegations that Defendants retaliated against him are therefore insufficient to state an actionable claim. *Allen v. St. John*, 827 F. App'x 1002, 1007 (11th Cir. 2020) (per curiam) (holding that prisoner's "retaliation claim was properly dismissed for lack of supporting facts" where the claim "contain[ed] only the conclusory assertion that [the prisoner] was retaliated against, and that is not enough to state a claim upon which relief may be granted"). His retaliation claims should therefore be dismissed without prejudice.

## IV. Conclusion

As discussed herein, Plaintiff's claims that Defendants Ward, Berry, Martin, and Easley were deliberately indifferent to the violent conditions at BSP shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motion for an order to show cause (ECF No. 14) be **DENIED.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Ward, Berry, Martin, and Easley, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has

been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local**

**Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 9th day of August, 2022.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge